Okay, I think everybody's settled in. Let's turn to 23-1361, Hoff v. Anadarko. Ms. Williams? May it please the Court, Christina Williams on behalf of the Anadarko appellants. I'd like to save five minutes for rebuttal, if I may. This is an ERISA benefits case. The district court erroneously reversed the plan administrator's denial of benefits to Mr. Hoff, and this court should reverse the district court's order for two reasons. First, the district court erred in applying de novo review to the administrator's decision instead of arbitrary and capricious review. Second, under either standard, the administrator's decision should be affirmed. Turning to my first point, the district court's application of de novo review is legally erroneous. This court reviews the administrator's decision anew, with no deference to the district court, and review is limited to the administrative record. This court has frequently said that it liberally construes plan language to give deference to the administrator, and that no magic language is required, not even the word discretion. Here, the plan language gives expansive discretion to the committee as the plan administrator. Well, I am not sure I agree with that. The way it's written is that it says the plan shall be interpreted by the committee in accordance with the term of the plan and their internal meanings. So the first rule is plan language governs. Then it says, however, the committee shall have the discretion to make any findings of fact needed in the administration of the plan, so findings of fact discretionary, and the committee shall have the discretion to interpret or construe ambiguous, unclear, or implied but omitted terms. So to me that says, yes, they have discretion, findings of facts, ambiguous, vague, or omitted but implied terms. Isn't that what that says? So that's what the first sentence says. However, we have to look at all of section 9.3g. As Your Honor noted, it states that the committee shall have the discretion to interpret or construe ambiguous, unclear, or implied terms and factual findings. Now we have the final sentence which says the validity of such decision shall not be given to an over review of challenged in court and shall be upheld unless clearly arbitrary or capricious. Well, it says the validity of any such finding of fact discretionary, interpretation, construction, or decision. They've already told us ahead which one of those things are discretionary and which ones aren't. I don't know how you can argue from the provision that it's plenary discretion as opposed to discretion tied to specific things, and our case law says you have to look carefully to determine when, what issues discretion has been granted on. This could have been written that they have discretion on everything, but it wasn't. And one of the things that I can't find is anywhere where Anadarko has argued that duties and responsibilities is a vague and ambiguous term. Am I correct that argument was never made? So you're correct that in the in the lower court, Anadarko did not take the position that it was ambiguous. However, Anadarko did not concede that it was unambiguous. And this is, the court need not consider this this plan language entirely in due because the Fifth Circuit has recently considered it. The Fifth Circuit, they stipulated that decision. First of all, it's an unpublished per curiam decision in which the party stipulated to an abuse of discretion or an arbitrary and capricious standard. I don't know how that helps us at all and all the 28 J's. I'm kind of going, did anybody read the case? So help me with the language we have. So I would agree that the Fifth Circuit opinion is a non-binding opinion, but I still think it's persuasive. First of all, what is going to be persuasive when the parties concede, the parties stipulated that the court could review it under arbitrary and capricious and nobody even raised the point I'm making that the provision granting discretion is limited. Well, so GIFT in that case said that they did not contest the abuse of discretion review in the Fifth Circuit, but the parties did spend about 15 pages extensively briefing the standard of review framework. It seems that that case doesn't help you. So let's just focus on the language that we have. What work is the word however doing if not delineating a distinction between plenary discretion and the position you're taking and the position that this report took? I mean that the word has to be doing some work. Absolutely, the work does some work and the word such does in that provision too. But this is a plan interpretation case. The parties dispute the meaning of a certain subsection of good reason event and that is defined as a material and adverse diminishment of duties as compared to those prior to the change of control. A material and adverse diminishment is not defined anywhere in the plan. So counsel, is your, I'm sorry, go ahead. Is 9.3G that the universe that they were relying on for where discretion resides? Yes, Judge. So we're not, because 9.3D and 9.3F also speak of discretion, but no one's talked about those. Yes. Do we ignore those or how should we be thinking about those? We've consistently relied on 9.3G throughout the case and that's what the parties have focused on. So I think that's where the court should focus its energies. But the Fifth Circuit opinion in GIFT is not the only one. In Saloma, the Ninth Circuit considered language stating that the administrator's decision would not be given de novo review. And I would say outside of GIFT and all the district court cases, that's the closest language. Okay, let's focus on our language. And for a minute, assume that I read this, and I'm going to get to vote, and it says to me that there's discretion if you have a vague and unclear, ambiguous term, or an implied but omitted term. If nobody ever argued all along this process, including to us, that, for example, duties and responsibilities is ambiguous, unclear, or that causation is implied but omitted. Can we now, sua sponte, look at this definition and say, hmm, we'll use this standard of review on these terms, but on these, we'll do the clear or abuse of discretion because they fall under this this carve-out. Well, the very fact that here the parties have consistently disputed what material and adverse diminishment means shows that it's an ambiguous provision and shows that it's unclear. So I would suggest that the court need not sua sponte, even if the parties could have been more clear and specifically saying ambiguous or not. The very fact that we have two different interpretations make it an ambiguous provision. So I would contend that the party, that the court can look at the plain language and combined with, of course, the court looks at the specific language of each plan, but this court has repeatedly said that it liberally construes plain language to give deferential review. That's not an argument you made to the district court, right? Did you make that argument to the district court, the ambiguity argument you just mentioned here? We did not specifically call it ambiguity, but the parties clearly had different interpretations, which by definition would be ambiguous. I don't want to beat a dead horse here, but what work does the word such do? Such findings of fact, etc. What does such do? Because it seems to me that it links back to the previous. I think it would have to, to have any meaning for the word such. But I think we have to consider that the committee did go a bit broader in using the word decision and it didn't use that in the prior sentence. And also you have this specific language that any such decision and findings interpretations shall not be given to an over review of challenged in court and shall be upheld unless clearly arbitrary or capricious. That's a very clear expression of the intent to give discretion to the administrator. So, you know, two points before saving time for rebuttal is that under either standard overview, the administrator's decision was correct and should be affirmed. If we apply arbitrary and capricious, we're asking whether it is a reasonable interpretation. If we're applying de novo, the court looks at it anew. Here the record shows that the committee engaged in an extensive review of everything Hoff submitted. It also interviewed his supervisors and it met... Is there anything in the record about what his, before the Latham project, what Mr. Hoff's project management was? So we can look to his essentially performance review files that are in the record that detail all of his projects and the committee considered that. The committee also looked at the entire project history for his division, both before the Latham gas project ended, which notably that went on for several months after the change of control and that wrapped up in COVID when there was severe economic downturn. Should we be looking at the Ramsey, his management of the Ramsey project, or should we be looking at his duties as a member of the mechanical integrity team? What's the relevant job that we're looking at for comparison purposes with Latham? We look at his duties as a project manager. So by definition, the committee found the project managers at Anadarko and at Oxy, their core duty is to manage the projects of the company. And as the committee found it is supported in the administrative record, those fluctuate over time. No two projects are the same. And the record also tells us that after the Latham gas project concluded, it's not that somebody else was getting the larger project. There were no projects of the same size and Hoff had the most responsibility of everyone in his division. What was the mechanical integrity team? I do not have extensive details in front of me, but he was assigned to help them answer questions. That was ancillary to his project management duties. So the question is whether his project management duties had a material and adverse diminishment, which as I discussed, when you compare them to what a definitional duty is, it is not. But you also have to ask for the definition of good reason event. Was it caused by the change of control? Where do you see in the plan a requirement of causation? It looks to me like the way the plan is written. It's just temporal. Is it happened after the change? So we look at that section that defines good reason event and the fact that it has a, yes, a temporal component to the before and after change of control highlights the importance of change of control. We also have to look at the preamble and the whole purpose of the plan. That's what I would call an implicit but omitted term. Right? I would agree. But nobody argued that. Anywhere along this case, even before this court, no one has argued that. No one used that exact language. Well, that is the exact language in the plan. Well, Anna Darko consistently argued that the committee correctly considered the economic impacts and whether his any change was a result of the change of control. So even if not this exact verbiage, the arguments, I would contend the arguments are made. So the arguments were made, but they were never tied to anything that allowed you to go beyond the plan language. I would dispute that also in the fact that the, that Anna Darko consistently pointed to the plan interpretation documents and made the argument that the committee had the discretion to interpret the plan and also look to plan interpretation documents. So that's another point where the parties argued it. Did the district court make a finding on ambiguity? I know you're saying that just the nature of the arguments presented would suggest that there is an ambiguity because you take different positions. But did the district court understand your argument to be one of ambiguity or did he think in fact that you, you, you contended that it was unambiguous? So two points, Your Honor. I think that the district court clearly understood that the parties had a very different interpretation of good reason event because it dealt with those in the opinion. But what's key before this court is the court gives no difference to the administer, to the district court and only looks at the administrative record. So the specific findings of the district court are not really at issue and the court need not address whether those are specifically correct or not. Right. I'm interested in this, not in terms of our review of the specific findings, but on sort of the trajectory of your litigation position, which seems to have, is different now than what it was in the briefing. I think that Anna Darko and the parties have consistently disputed what good reason event means and whether it applied to Mr. Hoth, how the change of control fit into that, what exactly his duties and responsibilities were, and what a material and adverse diminishment is. So I think while they have admittedly been fine-tuned, they have been consistent through litigation. I know you want some rebuttal time and I'll allow it, but just to finish up on the, the, the, you've imported also this notion of temporariness there. I mean, where does that come from and where does that leave an employee who has to make a termination decision within 90 days? So the plan clearly gives the committee the discretion to interpret the plan and that's what the plan interpretation document was. And that was a formal document sent to all of the employees well before Mr. Hoth resigned and even submitted his initial inquiry form. So that, that is intended to give practical examples to define the unclear terms of the plan. But it says right in it that the plan language controls. Absolutely, absolutely. And they didn't have the authority to amend the plan. Right? That's not a proper amendment of the plan to send that out. I would say that that's not a technical amendment. It's not a proper amendment. There are ways you can amend a RISA plan and that's not one. If the language controls and in the section that deals with these causes, you have I think four of them listed and only one of them expressly says that it's, if it's temporary, it doesn't count. Doesn't that imply that there is no temporary exclusion as to the other three? I see that I'm out of time if I may. Go ahead and answer. Answer that question. So I would say that none of the four specifically are going to reference another. There's an example that talks about the number of direct reports and direct reports is also not directly addressed in this idea of temporary or permanent. So I think you have to read them all together and they give light to the unclear provision in the term, which is what a material and adverse diminishment is as related to the change of control. Well, we were talking about good cause, not material and adverse, right? Well, don't we typically, when we're interpreting contracts and language, if the drafter in one area indicates this doesn't apply if it's temporary, we say they knew how to say that if they wanted to and they set it here and they didn't say it on these others. Doesn't that give us a pretty good indication that it doesn't apply to the others? I would disagree with that. I think you have to read that provision in light of the whole contract and we don't necessarily repeat everything every time we say it in a contract and you read it as a whole. All right. Thank you counsel. I will give you some rebuttal time. Thank you, Judge. Good morning, Your Honors. May it please the court. My name is Leah Van Lanshoot and I represent the appellee David Hoff. Today, I'm going to demonstrate why this court should adopt Judge Domenico's sound legal reasoning and affirm his judgment granting Mr. Hoff benefits under the amended and restated Anadarko change in control plan. This court should affirm the district court's award of benefits whether applying the de novo standard of review like Judge Domenico did or under the arbitrary and capricious standard. I will touch just briefly on the applicable standard of review. De novo review applies here. As the panel has pointed out, the language granting discretionary authority to the committee is limited. Those limited circumstances do not apply here. To answer Judge Rossman's question to my opposing counsel, Judge Domenico did make that finding. He made that finding when he applied the de novo standard of review. He said that neither party had argued that there was an ambiguous term, that there was an unclear term, or that there was an implied or omitted term. And so Judge Domenico does say that right in the beginning of his order when he decides to apply de novo review. Either way, the plan's limited grant of discretion to the committee is not applicable here. Are we reviewing the district court's decision or are we reviewing the committee's? You're reviewing the committee's decision. However, are we bound by the district court's determination as to ambiguity and implied terms? You're not bound by the district court court's decision in any way. I simply am urging you to adopt his reasoning. So, I look at this and I say duties and responsibilities is glaringly ambiguous. Am I not allowed to go back to the plan and say, oh, the committee had discretion to interpret this because it wasn't argued? Is there a waiver rule here? We would argue that there is a waiver rule. They absolutely never made this argument that the plan's terms were ambiguous or that the specific relevant terms that we're looking at were ambiguous. They've always maintained that their interpretation is correct under the unambiguous term of the document. Addressing Ms. Williams' argument that having two different interpretations by its very nature assumes ambiguity. That's a misnomer because the plan's interpretation, as I want to talk about today, was not on a reasoned basis. That is not a reasonable interpretation, and so it's not ambiguous. It's just a misapplication of the unambiguous terms. The duties and responsibilities we're talking about here, they have tied them throughout the entire litigation wrongly and throughout the administrative process to the nameless, faceless project manager. The nameless, faceless project manager is not what the committee was supposed to look at. They were supposed to look at the participant's duties, the employee's duties. The participant has a definition under the plan language that is tied to Mr. Hoff. Mr. Hoff's duties. Let me ask you this. Prior to the Latham project, had Mr. Hoff ever been a project manager on a project of the same size? Or bigger? No, that was the largest project in history. So his duties and responsibilities then are fixed as to the largest project he ever managed? No, that's absolutely not. Was he a project manager before he had the Latham project? Yes, he was a project manager. He actually was a project manager at a different division, a division that was geographical. And then he got promoted in 2017 to the Plants and Major Projects Division. So the Plants and Major Projects Division is what Jay Allen is over, which is a supervisor. And so prior to that, he was a project manager for small, medium-sized projects. Projects requiring one to two years of experience, like the Ramsey Slug Catcher project and the Wattenberg project. So what if they never had a change in control, but they didn't have any major projects? Would you consider him to have his duties and responsibilities diminished if they assigned him other projects and kept him being a project manager, and they gave him the biggest projects they had, but they didn't have anything as big as the Latham project? Is that still, he's got the same duties and responsibilities? No, this is, I mean, it's a case-by-case analysis. But in this case, we would not argue if he had, you know, at the Latham Gas Project, he had a $450 million budget. At the Ramsey Slug Catcher, he had a $600,000 budget. It was 0.14% of his budget. If there was an 80% budget... But my point is, there's no other projects the size of the Latham project. So they give him the biggest projects they have, but there's nothing that big. They could have given him three, four, five projects, medium-sized projects. It's his duties and responsibilities as a whole. As Mr. Allen admitted in to the committee, there was projects available in West Texas. There was medium-sized projects. He could have had several medium-sized projects if they had required him to go to West Texas. Now, would that have triggered another good reason provision? Yes, it would have. That's why they didn't require him to do that. And instead, they simply put him on a help desk to answer engineering questions, which is unquestionably, and which Judge Domenico unquestionably found to be a diminishment of his project manager duties. And so even if we were using the baseline of a project manager duty, which we're not, we're using Mr. Hoff's duties. Mr. Hoff as an individual, were his duties and responsibilities diminished before or after? And Judge McHugh, you're exactly right. The only causation requirement in the plan is temporal proximity. But, I mean, it is true that the whole reason for the plan was a change of control. Well, the reason for change and control severance plans is to eliminate the uncertainty for employees when their employer is up on the sales block, right? It encourages employees to stay, to keep their head down, keep doing the work in order to let the company be a hot commodity, to get sold. Because if they don't have assurance in their position, in their career trajectory, or in the job that they're doing, when the company's being sold, they'll leave. They'll leave. They don't have any assurances. So that's actually the point of a change in control severance plan, is to assure employees that if their company is at risk of a merger, that they can and they won't be personally affected by staying with the company in the face of the unknown. Now, although it seems odd that you could have a global pandemic that would, you know, evaporate work for a period of time, that you know, that would still be a legitimate reason for somebody to leave. Agreed. I mean, the fairness considerations in this court, I mean, that's what we're talking about here. What was Anadarko supposed to do in the face of COVID-19 when things slowed down and the economy was in flux? The answer is force majeure. Force majeure is the remedy for that. Anadarko did not exempt its obligations in circumstances of force majeure, and it it carries the consequence of that decision. Not the plan participants. Was that regrettable for Anadarko? Of course. Especially in hindsight. And their future plans will likely have force majeure clauses. They'll likely have unfettered discretion. But that's not the plan here. Mr. Hoff may not have been entitled to benefits if that was in the plan language. But the court must construe the plan language as written. That's not this case. That's not this plan. If future plans provided for that circumstance, that's fair play. Imposing unwritten after-the-fact requirements is not fair play. What's the definition of duties and responsibilities? There's no definition in the plan. Right, I'm well aware. Yes, so the definition of duties and responsibilities it goes to the plain language, right? What plain meaning of duties and responsibilities are. Duties and responsibilities are, say, I It's what you do. It's what you do on a daily basis. It's who you're responsible for. It's how you get your job done. So let's say I'm a college professor and my duties and responsibilities are to teach a class. And in the past, I've been a really popular professor and there's standing room only in my classroom and I'm teaching constitutional law. For whatever reason I give, I don't give enough A's and the next time I come in to teach I've got 15 students in a class that used to be 135. Have my duties and responsibilities changed? No, I would say they have not changed. Absolutely. Now, on the different analysis and the so how Anna Darka would have you read it, is that if I was a lead counsel in a complex commercial litigation trial, well, that's a duty of an attorney, right? If I was also or relegated to a warehouse off-site doing document review, well, that's the duty and responsibility of an attorney. That is a material diminishment regardless of it all being tied to the duty of an attorney or a project manager. I think what they're arguing is if you're lead counsel on a multi-year massive litigation that goes to a six-week jury trial and when that case is over, the only other cases in the office are much smaller and they make you lead counsel on a case that's going to be a three-day bench trial and it's going to be a much smaller case. You don't have as big a trial team. Have your duties changed or are you still lead counsel? You're still lead counsel. Your duties haven't changed. Is it a administrative proceeding? I mean, it's we're looking at the facts of the case here. We're looking at a 99.86% budget cut. We're looking at going part-time to a help desk to answer questions versus a $450 million budget. Now, if we were looking at a $300 million budget for four projects, we wouldn't be here. We wouldn't have, Mr. Huff wouldn't have asserted his claim. Mr. Huff wouldn't have thought that his duties had been materially and adversely diminished. I mean, we're looking at a 99.86% budget cut. We're looking at two contractors on a plan. I'm sorry, on a project, on the Ramsey slug catcher project. We're looking at answering engineering questions, something he did, you know, before he was even a project manager and the importance of that, the importance of that change in duties, is that nobody told him it was temporary. I mean, temporariness, as you, Judge McHugh, have pointed out, it's not in the plan, and it's not a problem. A project manager, every single project they have is temporary. Exactly, exactly, and temporariness in this context, in the plan's context, has to be in the interest of fairness and to not be arbitrary and capricious, has to be tied to the 90-day period in which the participant has to act, right? They have to act, they have to, or their claim will be forever barred if they don't act within 90 days. So, by its very nature, by the interest of fairness, by enforcing the plan as written, which the committee must do. Is there any mechanism to extend the window for the 90 days? Well, that's an interesting point, because that's what Anadarko should have done in the face of uncertainty, not required their employees to take on the role, or take on the risk of the pandemic and the unknown, and it being temporary in hindsight, because the answer is no. Or the answer is yes, I'm sorry. There was an avenue in that they could have said, your time is extended. They did that for the plan. They did that for the response to the claim for benefits. They extended, based on COVID-19, they extended their time for responding. They doubled it, both times, to the response to the claim, to the response to the appeal. They also extended the time that a claimant would have to make a claim after termination, and they explicitly did not extend the 90-day period, and reminded everybody in the Good Reason Committee response that you have 90 days, or your claim is forever barred. You act now, or forever hold your peace. And he did. He did it on the last day, and they didn't even tell him, I do want to talk about the Good Reason Inquiry Timeline, because he made a Good Reason Inquiry. That was before he got relegated to MIA Help Desk, but it was after the Ramsey Slug Catcher Project and the Wattenberg Project were assigned to him. That Good Reason Inquiry was submitted on March 30, after his Good Reason event on March 9, and the subcommittee took two months, more than two months, to respond. He was forced to resign, and he resigned before the Good Reason Subcommittee got back to him. So he didn't know, unlike what they said in their briefs, he didn't know that his claim had been denied before he resigned. He had to resign, or forever hold his peace. Can I ask one more question before we run out of time? Of course. Is there anything in the record to suggest that there were Latham-size projects available that were assigned to someone other than Mr. Hough? There's no evidence of that. There's no evidence of that. There's evidence that there was West Texas projects that he could have been assigned to, and there was medium-sized projects that he could have been assigned to. I know you're time's up, but just to follow up on that, is there anything in the record that discloses the projects he managed before Latham? Basically the size and budget of pre-Latham projects. There's nothing in the record. There are his reviews, his 2016 and 2017 reviews, that show that he was getting more experience and being assigned larger and larger projects and being the top of the top, but there's nothing the committee didn't... Right, the committee didn't consider any of that. All right. Thank you, counsel. Thank you. I would encourage the court to reform. Could you give Ms. Williams two minutes, please? May it please the court, I want to start by addressing a couple things my colleague said to clear up some questions from the record. First, Mr. Hough knew it was a temporary event during his good reason inquiry, and it's simply false the idea that he had to make a choice between submitting a claim and resigning that day versus waiting and seeing. That's the whole purpose of the good reason inquiry for him to, in essence, test it out and see if he's going to be allowed benefits. Second... Can I ask for clarification? When you say he knew it was a temporary event, do you mean his answering engineering questions, or do you mean him managing smaller projects? Or both? I would say definitely, as to the MI team, there's evidence of that in the record. As to smaller projects, I think you hit it on the head, Judge McHugh. The variability in projects for a project manager is to manage the projects that the company had, and at the time that he resigned, so in April 2019, we have the change of control. I think we all remember in early to mid-March 2020, COVID happened, the economy tanked, gas prices tanked, and it was not until months later that he resigned and had been assigned a smaller project and watched all of his peers be managing smaller projects as well. So I think that unless he thought that that was the new economy forever, there was a feeling of, as we all thought, that this was temporary and things would bounce back. I'd also like to hit on the point that the record shows that the Latham Gas Project was the largest he had ever had, and indeed, there is no evidence in the record that there was anything close to that project after it concluded. We can look at his performance reviews to see his specific project history. We can also look at the project schedules from Forsyth in the record and Allen's multiple interviews that talked about all the variety in the projects had, and no two were the same. And I'm out of time. Thank you. Thank you, counsel. I appreciate the arguments. That was helpful. Counsel is excused and the case shall be submitted.